**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA, Petitioner,**

v.

**Thomas S. KLEPPE, Secretary of the Interior, Respondent,**

**Bituminous Coal Operators Association, Inc. and Zeigler Coal Company, Intervenors.**

**No. 75–1003.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 3, 1976.

Decided April 13, 1976.

Rehearing Denied May 6, 1976.

---

Steven B. Jacobson, Washington, D. C., with whom Joseph A. Yablonski and Harrison Combs, Washington, D. C., were on the brief for petitioner.

Michael Kimmel, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on the brief for respondent.

William A. Gershuny, Washington, D. C., with whom Guy Farmer, Washington, D. C., and J. Halbert Woods, Chicago, Ill., were on the brief for intervenors BOAC and Zeigler Coal Co.

L. Thomas Galloway and Joseph N. Onek, Washington, D. C., filed a brief on behalf of Council of the Southern Mountains, Inc., as amicus curiae.

Before WRIGHT, McGOWAN and TAMM, Circuit Judges. Opinion for the Court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Petitioner, United Mine Workers of America ("UMWA"), seeks review of an order of the Interior Department's Board of Mine Operations Appeals (Board), reversing an order of the Interior Department's Board of Mine Operations Appeals (Board), reversing an administrative law judge's determination that a federal mine inspector's withdrawal order had properly issued. Petitioner challenges the Board's interpretation of 30 U.S.C. § 814(c)(1) as it relates violation of a mandatory health or safety standard is: (1) "of such nature as could significantly and substantially contribute to the cause and effect of a mine safety or health hazard," and, (2) "caused by an unwarrantable failure of such operator. . . ." The second sentence of section 814(c)(1) clearly states that a withdrawal order may issue only if within 90 days of the issuance of the above notice, the inspector finds: (1) "another violation of any mandatory health or safety standard," and, (2) "such violation [is] also caused by an unwarrantable failure of such operator. . . ." In its review of the administrative law judge's decision that the withdrawal order had properly issued, the Board interpreted the second sentence of section 814(c)(1) to include *by implication* the "significantly and substantially" language of

1. If, upon any inspection of a coal mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that while the conditions created by such violation do not cause imminent danger, such violation is of such nature as could significantly and substantially contribute to the cause and effect of a mine safety or health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards, he shall include such finding in any notice given to the operator under this chapter. If, during the same inspection or any subsequent inspec- tion of such mine within ninety days after the issuance of such notice, an authorized representative of the Secretary finds another violation of any mandatory health or safety standard and finds such violation to be also caused by an unwarrantable failure of such operator to so comply, he shall forthwith issue an order requiring the operator to cause all persons in the area affected by such violation, except those persons referred to in subsection (d) of this section, to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secreteary [*sic*] determines that such violation has been abated.

30 U.S.C. § 814(c)(1)(1971).

the first sentence. The issue on appeal then is whether Congress intended to apply this gravity criterion to the second sentence, and, therefore, to require another prerequisite to be met before a withdrawal order may issue pursuant to section 814(c)(1).

■ We conclude that the legislative history behind section 814(c)(1) clearly shows Congress meant what it said in the second sentence and therefore nothing more may be implied into it. Hence, we must reverse and remand to the Board for further consideration.

## I. THE FACTUAL BACKGROUND

On April 28, 1972, a federal mine inspector issued a notice of violation to Zeigler Coal Company (Zeigler) pursuant to 30 U.S.C. § 814(c)(1), finding that the accumulation of loose coal and coal dust in the Williamson County, Illinois mine amounted to a violation of 30 C.F.R. § 75.400.[2] A subsequent inspection on May 11, 1972, resulted in the 10 a. m. issuance of the section 814(c)(1) withdrawal order in dispute here when the inspector found another violation of 30 C.F.R. § 75.400. After a general clean-up of the area, the order was terminated at 11:15 p. m.

On June 5, 1972, Zeigler filed a request for administrative review of this section 814(c)(1) withdrawal order. After a hearing, the administrative law judge denied Zeigler's application to vacate the order and specifically found that the "significantly and substantially" language of the first

sentence did not operate on the withdrawal order portion of section 814(c)(1).[3] Zeigler, joined by the Bituminous Coal Operators Association, appealed this decision to the Board of Mine Operations Appeals.

Citing the record's failure to reflect that the gravity criterion in section 814(c)(1) had been met, the Board reversed the administrative law judge's determination and declared the withdrawal order invalid.[4] UMWA's appeal to this court was held in abeyance pending reconsideration of this decision by the Board. Noting that an analysis of the legislative history was "unilluminating," the Board reaffirmed its prior decision on May 13, 1975, and this appeal followed.

## II. THE LEGISLATIVE HISTORY BEHIND 30 U.S.C. § 814(c)(1).

Congressional attempts to provide adequate safeguards for the nation's miners date back to 1865. Each successive mining disaster over the years renewed the cry for more effective legislation. The Federal Coal Mine Health and Safety Act of 1969, which repealed the 1952 Act and its amendments, was enacted after a mine explosion on November 20, 1968, killed 78 workers in a Farmington, West Virginia mine.[5]

■ The primary purpose of the 1969 Act was to protect mining's most valuable resource—the miner. House Comm. on Education and Labor, 91st Cong., 2d Sess., Legislative History Federal Coal Mine Health and Safety Act 1 (Comm. Print 1970) ("House Leg. Hist."). In the first section of

---

**2.** Coal dust, including float coal dust deposited on rock-dusted surfaces, loose coal, and other combustible materials, shall be cleaned up and not be permitted to accumulate in active workings, or on electric equipment therein.

30 C.F.R. § 75.400 (1975).

**3.** The provisions of section 104(c)(1) quoted above show that it is not necessary in order to establish the validity of an order of withdrawal under this section, that there be a showing that the violation could significantly and substantially contribute to the cause and effect of a mandatory health or safety standard. It need only be shown that the violation was caused by the unwarrantable failure

of the operator to comply with the standard. In my judgment, evidence has been introduced which does establish this requirement. J.A. at 118.

**4.** We conclude that Zeigler and BCOA were and are correct in their contention that the record must show that the violation in question could have significantly and substantially contributed "to the cause and effect of a mine safety or health hazard." J.A. at 138.

**5.** For a concise history of federal mine legislation, *see* House Comm. on Education and Labor, 91st Cong., 2d Sess., Legislative History Federal Coal Mine Health and Safety Act 1–14 (Comm. Print 1970).

the Act Congress noted the "urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal mines in order to prevent death and serious physical harm. . . ." 30 U.S.C. § 801(c) (1971). In order to achieve these goals, Congress intended the Act to be liberally construed. House Leg. Hist. at 1025. Since the Act is a remedial and safety statute, this court must view section 814(c)(1) in the light most favorable to its broad purpose. *Freeman Coal Mining Co. v. Interior Board of Mine Operations Appeals,* 504 F.2d 741, 744 (7th Cir. 1974); *Phillips v. Interior Board of Mine Operations Appeals,* 163 U.S.App.D.C. 104, 500 F.2d 772, 782 (1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975); *Reliable Coal Corp. v. Morton,* 478 F.2d 257, 262 (4th Cir. 1973). Following then the clear language of the statute and the obvious interpretation intended by Congress as elucidated by the legislative history discussed *infra,* we find that Congress' goals of legislating more effective measures against health and safety hazards in mines is furthered by this reading of section 814(c)(1).

The section 814(c)(1) withdrawal order is an enforcement tool derived from the 1966 amendments to the 1952 Federal Coal Mine Safety Act. 80 Stat. 84. It was commonly referred to as a "reinspection closing order"[6] and provided that if within 90 days after a warning notice was given to an operator, an inspector found that any "similar such violation" existed, he must issue a withdrawal order. In their separate efforts to draft stronger enforcement tools, the House and Senate proposed various bills, in some cases maintaining this terminology and in others, changing the language.

The Senate bills vacillated between inserting "any such violation" language, eliminating a comparable section 814(c)(1) provision, and maintaining the former "any such similar violation" requirement. *See* Senate Comm. on Labor and Public Welfare, 94th Cong., 1st Sess., Legislative History of the Federal Coal Mine Health and Safety Act

of 1969 (Public Law 91–173) 2236, 2345, 2382, 2443, 2530, 2694, 2796 (Comm.Print 1975). The proposed House bills also varied in like manner. *See Hearings on H.R. 4047, H.R. 4295, and H.R. 7976 Before a General Subcomm. on Labor of the House Comm. on Education and Labor,* 91st Cong., 1st Sess. 3, 19, 27 (1969).

The final statutory schemes arrived at by both Houses differed substantially in their respective effects. The House version, H.R. 13950, contemplated maintaining the prior "reinspection closing order." It kept the "any *similar* such" violation requirement. House Leg. Hist. at 565, 588, 636, 928. The Senate bill, S. 2917, changed the requirement to violation of "any such" mandatory health or safety standard. House Leg. Hist. at 542. The difference which these choices of words makes is illustrated in the House and Senate Reports accompanying their respective bills.

The House Report makes clear that the violation which gives rise to the section 814(c)(1) notice, must be the same or similar to the violation which gives rise to the section 814(c)(1) withdrawal order:

If the investigator finds a failure of an operator to comply with a mandatory health or safety standard, he shall issue a notice of the finding of the violation. Within 90 days the investigator shall reinspect the mine and *if the violation is found to continue,* he shall issue an order requiring the operator to withdraw all personnel until the violation has been abated.

House Leg. Hist. at 636 (emphasis added).

In contrast, the Senate Report explains that *any* further unwarrantable violation, regardless of whether it is similar to the violation which gives rise to the issuance of a notice, is sufficient basis for the issuance of a withdrawal order:

If an inspector finds a violation of a standard that does not cause an imminent danger, but is of such a nature as could significantly and substantially contribute to any mine hazard, and if he finds that

6. *Id.* at 6.

the violation is due to an unwarrantable failure to comply with the standard, he includes the finding in the notice. During any inspection within 90 days after issuance of the notice, if an inspector finds *another* violation which is *also* due to an unwarrantable failure of the operator to comply, he must order the miners withdrawn from the mine.

House Leg. Hist. at 37 (emphasis added).

The version of S. 2917 which was finally enacted makes it abundantly clear that *any* unwarranted violation of a mandatory health or safety standard is sufficient to justify issuance of a section 814(c)(1) withdrawal order. That the Conference Committee adopted the Senate version is clear from the "Statement of the Managers on the Part of the House":

> If, during that inspection or any subsequent inspection carried out within 90 days after the issuance of the notice, another violation of *any* such mandatory standard is discovered by the inspector and he finds that the violation is also caused by an unwarrantable failure to comply, the inspector is required to issue a withdrawal order. . . . The comparable provision of the House amend-

ment required the inspector, in such a case, to cause the mine to be reinspected to determine if *any similar* violation exists. If such a *similar violation* did exist, and was caused by the unwarrantable failure of the operator to comply, the inspector would then issue a withdrawal order. *The substitute agreed upon in conference adopts the provision of the Senate version of section* 104(c)(1) [30 U.S.C. § 814(c)(1)] with technical changes to make clear that, if another violation of *any* mandatory health or safety standard occurs which is also caused by an unwarrantable failure of such operator to comply, then a withdrawal order must be issued.

House Leg. Hist. at 1029–30 (emphasis added).

## III. CONCLUSION

The statute and the legislative history are clear. There is no gravity criterion required to be met before a section 814(c)(1) withdrawal order may properly issue.

We must therefore reverse and remand to the Board for further proceedings consistent with this opinion.[7]

*So ordered.*

---

**7.** Since the Board did not consider whether the operator's violation was "unwarrantable," we do not reach petitioner's claim that the Board's definition of "unwarrantable" misinterprets the statute. Although the Board has previously decided this question adversely to petitioner's position, Eastern Associated Coal Co., 3 IBMA 331, 349 (1974), J.A. 177, 195, we accept the Government's representation that the Board on remand will "take into account the legislative history upon which the Union relies. . . ." Br. at 50. The issue of the proper definition of "unwarrantable" will, of course, be open on any appeal following the remand proceedings.