**SECRETARY OF LABOR, MINE SAFETY AND HEALTH ADMINISTRATION, Petitioner**

v.

**FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION and Jim Walter Resources, Inc., Respondents**

No. 96–1164.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 28, 1997.

Decided May 2, 1997.

Robin A. Rosenbluth, Attorney, U.S. Department of Labor, argued the cause, Washington, DC, for petitioner. With her on the brief were J. Davitt McAteer, Acting Solicitor of Labor, Mount Hope, WV and W. Christian Schumann, Counsel.

Warren B. Lightfoot, Jr. argued the cause, Birmingham, AL, for respondents. With him on the brief was David M. Smith. J. Alan Truitt and Norman M. Gleichman, Takoma Park, MD, entered appearances.

Before: GINSBURG, HENDERSON and TATEL, Circuit Judges.

TATEL, Circuit Judge.

Under the Federal Mine Safety and Health Act, violations of mine safety and health standards that contribute "significantly and substantially" to a coal mine hazard and that result from an "unwarrantable failure" of the mine operator to comply with applicable standards may lead to orders requiring mine operators to remove workers from unsafe areas. In this case, the Secretary of Labor petitions for review of a Federal Mine Safety and Health Review Commission decision holding that, in making "significantly and substantially" and "unwarrantable failure" determinations, mine inspectors must confine their assessments to conditions that violate health and safety standards and may not consider nearby nonviolative conditions. Because we conclude that the Commission's exclusion of nonviolative conditions from the "significantly and substantially" assessment is required by the plain language of the Mine Safety Act, we deny the Secretary's petition for review on this point. However, because the language

of the "unwarrantable failure" provision is ambiguous, and because the Secretary, to whom we owe *Chevron* deference, permissibly interprets the Act to allow consideration of conditions that do not violate health and safety standards, we reverse and remand the unwarrantability portion of the Commission's decision.

## I

The Mine Safety Act directs the Secretary of Labor or the Secretary's authorized representatives to inspect coal mines frequently. 30 U.S.C. § 813(a) (1994). If an inspection reveals a violation of mandatory mine health and safety regulations, the inspector issues a citation. *Id.* § 814(a). If the inspector determines that the violation is both "of such nature as could significantly and substantially contribute to the cause and effect of a coal ... mine safety or health hazard" and "caused by an unwarrantable failure of [the mine] operator to comply with such mandatory health or safety standards," that finding must be included in the citation. *Id.* § 814(d)(1).

Mine operators cited for violations that both contribute "significantly and substantially" to a mine hazard and result from an "unwarrantable failure," and who receive another "unwarrantable failure" citation within ninety days, receive what are known as section 814(d)(1) withdrawal orders. *Id.*; *see also International Union, United Mine Workers v. Kleppe,* 532 F.2d 1403, 1407 (D.C.Cir.1976). Withdrawal orders require mine operators to remove most workers from the area affected by the cited violation until the violation is corrected. 30 U.S.C. § 814(d)(1). Once an operator receives a section 814(d)(1) withdrawal order, any "similar" violations lead automatically to additional withdrawal orders under section 814(d)(2). Mine operators receiving section 814(d)(2) withdrawal orders are not again measured against the more lenient section 814(d)(1) standards until subsequent inspections find no "similar" violations. *Id.*

Because the parties debate the precise meaning of section 814(d), we quote its key provisions in full:

(1) If, upon any inspection of a coal or other mine, an authorized representative of the Secretary finds that there has been a violation of any mandatory health or safety standard, and if he also finds that, while the conditions created by such violation do not cause imminent danger, such violation is of such nature as could significantly and substantially contribute to the cause or effect of a coal or other mine safety or health hazard, and if he finds such violation to be caused by an unwarrantable failure of such operator to comply with such mandatory health or safety standards, he shall include such finding in any citation given to the operator under this chapter. If, during the same inspection or any subsequent inspection of such mine within 90 days after the issuance of such citation, an authorized representative of the Secretary finds another violation of any mandatory health or safety standard and finds such violation to be also caused by an unwarrantable failure of such operator to so comply, he shall forthwith issue an order requiring the operator to cause all persons in the area affected by such violation ... to be withdrawn from, and to be prohibited from entering, such area until an authorized representative of the Secretary determines that such violation has been abated.

(2) If a withdrawal order with respect to any area in a coal or other mine has been issued pursuant to paragraph (1), a withdrawal order shall promptly be issued by an authorized representative of the Secretary who finds upon any subsequent inspection the existence in such mine of violations similar to those that resulted in the issuance of the withdrawal order under paragraph (1) until such time as an inspection of such mine discloses no similar violations. Following an inspection of such mine which discloses no similar violations, the provisions of paragraph (1) shall again be applicable to that mine.

*Id.* § 814(d).

Appellee Jim Walter Resources operates the Number 7 coal mine in Birmingham, Alabama. Because at the time of the January 31, 1994 inspection at issue here Jim

Walter Resources had already received a section 814(d)(1) withdrawal order, it would receive a section 814(d)(2) withdrawal order if an inspector found a health and safety violation "similar" to the violation which prompted the section 814(d)(1) order. During the January 31 inspection, the inspector found a large pile of combustible trash, including paper bags, oily rags, wooden pallets, and a five-foot wide cable spool in the mine's Number 3 entry. Mine safety and health regulations prohibit the accumulation of combustible materials in "active workings," that is, "any place in a coal mine where miners are normally required to work or travel." 30 C.F.R. §§ 70.2(b), 75.400 (1996). A heavy ventilation curtain ran across the top of the pile, dividing the pile into two parts. The bulk of the trash lay on the "inby" side of the curtain—the side closer to the mine's interior. A smaller quantity of trash, including paper bags, cardboard boxes, and a torn garbage bag containing sandwich bags and oily rags, lay on the "outby" side of the curtain—the side closer to the mine shaft and entrance. Issuing a citation for the entire pile of trash, the inspector found the accumulation both "significant and substantial" and the result of an "unwarrantable failure" to comply with health and safety standards.

Jim Walter Resources contested the citation. Following a hearing, an Administrative Law Judge ruled that only the small portion of trash on the outby side of the ventilation curtain violated the regulation because only that portion lay in active workings. Having so determined, the ALJ found that the outby violation was neither "significant and substantial" nor the result of an "unwarrantable failure."

Before the Federal Mine Safety and Health Review Commission, the Secretary challenged the ALJ's "significant and substantial" and "unwarrantable failure" findings concerning the small outby pile as both legally erroneous and unsupported by substantial evidence. Although not contesting the ALJ's finding that the large inby pile of trash was not a violation, the Secretary argued that the ALJ erroneously failed to consider the inby trash when evaluating the

seriousness of the outby violation. By a 3–2 vote, the Commission affirmed the ALJ. According to the Commission, it would be "impermissibl[e] [to] use the Secretary's evidence as to the seriousness of nonviolative conduct [the inby trash] to establish that the violative conduct [the outby trash] was [significant and substantial]." *Jim Walter Resources, Inc. v. Secretary of Labor,* 18 F.M.S.H.R.C. 508, 511 (1996). For the same reason, the Commission ruled that "[t]he operator's conduct in permitting [the] non-violative accumulation cannot ... support a finding of unwarrantable failure as to the violative accumulation." *Id.* at 512.

■ In his petition for review, the Secretary advances the same arguments he made before the Commission: the Commission should have considered the inby materials in determining whether the violation contributed "significantly and substantially" to a mine hazard and resulted from an "unwarrantable failure"; and, even excluding the inby materials, the ALJ's findings are unsupported by substantial evidence. Because the Secretary's first argument challenges the Commission's interpretation of the Mine Safety Act, we proceed under the familiar standards of *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *See Secretary of Labor, Mine Safety and Health Administation, on Behalf of Bushnell v. Cannelton Industries, Inc.,* 867 F.2d 1432, 1435 (D.C.Cir.1989) (applying *Chevron* to interpretive dispute between Secretary of Labor and Federal Mine Safety and Health Commission). We ask first whether "Congress has directly spoken to the precise question at issue," *Chevron,* 467 U.S. at 842, 104 S.Ct. at 2781–82; if so, the Commission, the Secretary, and this court must give effect to Congress's "unambiguously expressed intent." *Id.* at 842–43, 104 S.Ct. at 2781–82; *Cannelton Indus.,* 867 F.2d at 1435. If "the statute is silent or ambiguous with respect to the specific issue," we ask whether the agency's position rests on a "permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782.

## II

We begin with the Secretary's argument that in considering whether a violation contributes "significantly and substantially" to a mine hazard, decisionmakers—inspectors, ALJs, and the Commission—must take account of the seriousness of nearby conditions, even those not amounting to violations of health and safety standards. In making this argument, the Secretary emphasizes the word "contribute" in section 814(d)(1), which provides that violations are significant and substantial if they are "of such nature as could significantly and substantially contribute to the cause and effect of a coal ... mine safety or health hazard." 30 U.S.C. § 814(d)(1). According to the Secretary, the presence of the word "contribute" means that "factors in addition to the violation itself should be considered in assessing the hazard created by the violation." Pet'r's Br. at 17.

■ We think the Secretary focuses on the wrong word in section 814(d)(1). As we read the statute, the critical words are "such violation is of such nature." A "significantly and substantially" finding may be made only after an authorized representative has found a "violation" of mine safety and health regulations. 30 U.S.C. § 814(d)(1). Having found a "violation," the representative must designate it significant and substantial if "*such violation* is of *such nature* as could significantly and substantially contribute to the cause or effect of a coal ... mine safety or health hazard." *Id.* (emphasis added). The statute does not say "such violation in combination with other factors," nor does it say "such violation together with surrounding circumstances that do not violate health and safety standards." By focusing the decisionmaker's attention on "such violation" and its "nature," Congress has plainly excluded consideration of surrounding conditions that do not violate health and safety standards. Nonviolative surrounding conditions are not part of "such violation[s]," nor do they affect the "nature" of those violations. The Commission thus ruled that "[b]ecause section 104(d)(1) expressly provides that [a significant and substantial] determination arises from *the nature of a violation*, the inby nonviolative accumulation cannot support [a sig-

nificant and substantial] designation as to the outby, violative accumulation." *Jim Walter Resources, Inc.,* 18 F.M.S.H.R.C. at 511 (citation omitted). Because the Commission did precisely what the statute unambiguously requires, we affirm its exclusion of the inby materials from the "significantly and substantially" calculation. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

Having concluded that the Commission's interpretation follows from the plain language of section 814(d)(1), we have no need to consider the Secretary's policy and legislative history arguments. *ACLU v. FCC,* 823 F.2d 1554, 1568 (D.C.Cir.1987). Nor need we consider his claim that the Commission failed to distinguish or overturn prior cases where, according to the Secretary, the Commission considered surrounding conditions when determining whether particular violations contributed "significantly and substantially" to mine hazards. For the record, however, we think the Secretary misinterprets the Commission's precedents. Although the Commission has considered nonviolative surrounding conditions, the cases cited by the Secretary do not speak to the issue before us today. The statute requires a decisionmaker, having found a violation, to make two additional findings: whether there is a "hazard" to which the violation might contribute; and, if so, whether the violation "significantly and substantially" contributes to that "hazard." 30 U.S.C. § 814(d)(1). When evaluating the first question—existence of a "hazard"—the Commission does consider surrounding conditions. *See, e.g., Cyprus Plateau Mining Corp. v. Secretary of Labor,* 16 F.M.S.H.R.C. 1610, 1613–14 (1994) (considering "generally poor condition" of mine roof); *Secretary of Labor v. Texasgulf, Inc.,* 10 F.M.S.H.R.C. 498, 501 (1988) (considering levels of methane surrounding violation); *Secretary of Labor v. U.S. Steel Mining Co.,* 6 F.M.S.H.R.C. 1573, 1574 (1984) (finding no error when ALJ "evaluated the cited violation in terms of 'continued normal mining operations'"). But when the Com-

mission analyzes whether a particular violation "significantly and substantially" contributes to the "hazard," it considers, as it did here, only the particular violation's contribution. "[I]t is the *contribution* of a violation to the cause and effect of a hazard that must be significant and substantial." *Texasgulf,* 10 F.M.S.H.R.C. at 500 (emphasis in original); *see also Secretary of Labor v. Mathies Coal Co.,* 6 F.M.S.H.R.C. 1, 3 (1984); *Secretary of Labor v. Cement Div., Nat'l Gypsum Co.,* 3 F.M.S.H.R.C. 822, 827 (1981) ("[A] violation 'significantly and substantially' contributes to the cause and effect of a hazard if the violation could be a major cause of a danger to safety or health.").

 Turning to the Secretary's alternative argument that, even excluding the larger amount of inby materials, the Commission's decision is unsupported by substantial evidence, we must uphold the Commission's factual determinations if on the record as a whole, "there is 'such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion.'" *Chaney Creek Coal Corp. v. FMSHRC,* 866 F.2d 1424, 1431 (D.C.Cir.1989) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *see* 30 U.S.C. § 816(a)(1). An agency's conclusion "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Western Air Lines, Inc. v. CAB,* 495 F.2d 145, 152 (D.C.Cir.1974) (citation omitted). Applying this highly deferential standard, we have no trouble concluding that the Commission's decision rests on substantial evidence. The small amount of outby trash consisted of a few paper bags, cardboard boxes, sandwich wrappers, oily rags, and part of a torn plastic garbage bag. Before the ALJ, the Secretary presented evidence of surrounding conditions, including the history of the mine's methane ignitions and face fires, and of the trash's combustibility. Excluding evidence of nonviolative conditions, the Commission concluded that the Secretary failed to prove that the small outby trash pile could "significantly and substantially" contribute to the cause or effect of a mine fire. *Jim Walter Resources, Inc.,* 18 F.M.S.H.R.C. at 511. Although the Secretary's evidence

may suggest that the neighboring inby trash enhanced the danger of fire, a reasonable factfinder could have concluded that the record contained insufficient evidence that this danger was markedly increased by the few additional outby items.

Underlying the Secretary's arguments, both statutory and evidentiary, is his concern that dangerous accumulations of trash outside active workings will go unchecked if the Commission's decision is allowed to stand. *See, e.g.,* Pet'r's Pet. for Discretionary Review at 10. If collections of trash outside active workings can be both permissible and hazardous, the fault· lies neither with the Mine Safety Act nor with the Commission's legal reasoning, but with the Secretary's combustible materials regulation, which forbids accumulations of combustible materials in active workings. 30 C.F.R. § 75.400. The regulation does not prohibit such accumulations in inactive areas. We think concurring Commissioner Riley put it just right: "the regulation may not fully effectuate statutory purposes. However, if the Secretary sincerely believes the regulation is deficient, he should clarify its language through rulemaking, rather than ask the [decisionmaker] to rewrite the regulation by adjudication." *Jim Walter Resources, Inc.,* 18 F.M.S.H.R.C. at 515 (Riley, Comm'r, concurring).

## III

At oral argument, we asked the parties whether we would need to reach the second issue in this case—the Secretary's challenge to the Commission's ruling that the outby trash accumulation did not result from the operator's "unwarrantable failure" to comply with health and safety standards—were we to sustain the Commission's "significantly and substantially" ruling, as we now have. In a supplemental brief filed in response to our questions, Jim Walter Resources argues that the word "similar" in section 814(d)(2) means that section 814(d)(2) withdrawal orders require both "significantly and substantially" and "unwarrantable failure" findings, and that our affirmance of the Commission's rejection of the Secretary's "significantly and substantially" finding therefore ends this

matter. In his supplemental brief, the Secretary contends that we must resolve the "unwarrantable failure" issue because a section 814(d)(2) withdrawal order can rest on an "unwarrantable failure" finding alone:

> Because under Section 104(d)(2) the Secretary must issue a withdrawal order if he finds a violation "similar to those that resulted in the issuance of [a] withdrawal order under [Section 104(d)(1) ]," and because there is no requirement that the violation forming the basis for a Section 104(d)(1) withdrawal order be "significant and substantial," a withdrawal order under Section 104(d)(2) also may be issued on the basis only of a finding that the violation was an "unwarrantable failure."

Pet'r's Supp. Br. at 3 (brackets in original). The Commission agrees with the Secretary. *Secretary of Labor v. Wyoming Fuel Co.*, 16 F.M.S.H.R.C. 1618, 1622 n.7 (1994) (stating in dictum that "[i]f subsequent inspections of the mine reveal additional unwarrantable failure violations, withdrawal orders are issued under section 104(d)(2) of the Act ...."); *see also United Mine Workers v. FMSHRC*, 768 F.2d 1477, 1478–79 (D.C.Cir. 1985) (stating in dictum that "once a withdrawal order has been issued, *any* subsequent unwarrantable failure results in another such order") (emphasis in original).

■ We think the Secretary, to whom we owe *Chevron* deference, has the better reading of the statute. Section 814(d)(1) has two steps—a citation step and a withdrawal order step. For a citation under section 814(d)(1) to issue, an inspector must find a violation which is both "significant[ ] and substantial[ ]" and the result of an "unwarrantable failure." Once cited under section 814(d)(1), a mine operator will receive a withdrawal order if an inspector cites it for an "unwarrantable failure" violation within ninety days of the original citation. Unlike section 814(d)(1) citations, section 814(d)(1) withdrawal orders require no "significantly and substantially" findings. *International Union*, 532 F.2d at 1405–07. Because section 814(d)(2) refers to violations "similar to those" that led to the section 814(d)(1) withdrawal order, section 814(d)(2) withdrawal orders likewise may issue on the basis of

"unwarrantable failure" findings alone. We thus proceed to consider whether the Commission applied the proper legal standard when it concluded that the violation here did not result from an "unwarrantable failure."

On this issue, the parties' arguments echo their positions regarding the relevance of the nonviolative inby materials to the "significantly and substantially" assessment. In reaching its conclusion, the Commission held that it would be "impermissibl[e]" to use "evidence as to non-violative conduct to establish that ... violative conduct ... was unwarrantable." *Jim Walter Resources, Inc.*, 18 F.M.S.H.R.C. at 512. The Secretary contends that the Commission's evidentiary ruling conflicts with the language of section 814(d)(1). According to the Secretary, the inby materials, even if not violative of health and safety standards, are relevant to determining whether the mine operator's outby violation results from an "unwarrantable failure."

We begin again with the language of section 814(d)(1): inspectors must determine whether "such violation [was] caused by an unwarrantable failure of [the] operator to comply with such mandatory health or safety standards." 30 U.S.C. § 814(d)(1). Reading this language just as it reads the "significantly and substantially" clause, the Commission argues that inspectors, in making unwarrantability assessments, must look only to the conditions that violate health and safety standards. Although this is certainly one way to read section 814(d)(1), because the "unwarrantable failure" clause differs critically from the "significantly and substantially" clause, the Commission's position is not the only reasonable interpretation. The "significantly and substantially" clause asks what *effect* the violation will have. By comparison, the unwarrantability clause asks what type of conduct *caused* the violation. Moreover, both the Secretary and the Commission interpret the words "unwarrantable failure" to require a culpability determination similar to gross negligence or recklessness. *See, e.g., Emery Mining Corp. v. Secretary of Labor*, 9 F.M.S.H.R.C.1997, 2001 (1987) (construing unwarrantable failure as "aggravated conduct constituting more than ordinary negli-

gence"); Pet'r's Br. at 29. Citing the Restatement (2nd) of Torts § 283 (1965), the Secretary argues that this negligence-based definition of "unwarrantable failure" requires consideration of surrounding circumstances. *Id.* ("[T]he standard of conduct to which [the actor] must conform to avoid being negligent is that of a reasonable man *under the circumstances.*") (emphasis added). In this case, for example, the Secretary claims that the ventilation curtain and vehicle tracks running across the trash pile and the large concrete blocks on top of the pile demonstrate that Jim Walter Resources knew of but ignored the trash accumulation. The Secretary argues, in other words, that the inby trash, although not violating health and safety standards, demonstrates negligence rising to unwarrantability.

■ Looking only to the text of section 814(d)(1), we cannot resolve this dispute between the Secretary and the Commission—both interpretations find support in the statute's language. Because we discern no other meaning of section 814(d)(1) that clearly resolves the issue before us, we proceed to *Chevron*'s second step. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Where, as here, the Secretary and the Commission disagree over the interpretation of the statute, we defer to the Secretary. *Cannelton Indus.,* 867 F.2d at 1435.

■ Examining all relevant materials—statutory language, legislative history, and legislative purpose, *Chevron,* 467 U.S. at 859–64, 865, 104 S.Ct. at 2790–92, 2793—we find the Secretary's construction of the Act reasonable. To begin with, the Secretary's interpretation is not inconsistent with the language of section 814(d)(1). *Independent Petroleum Ass'n of Am. v. Babbitt,* 92 F.3d 1248, 1257 (D.C.Cir.1996) ("[W]e defer to an agency's reasonable interpretation of a statute ... so long as it is not inconsistent with the unambiguously expressed congressional intent."). Because the "unwarrantable failure" clause, unlike the "significantly and substantially" clause, directs decisionmakers to consider the cause of the violation, the statute's language permits an interpretation that considers mine conditions beyond the violation itself, including conditions not themselves violating mine safety and health standards. The Secretary's expansive interpretation of section 814(d)(1) also finds support in the Act's legislative history. As the Secretary points out, Congress intended a broad reading of "unwarrantable failure," *see* S.Rep. No. 95–181, at 31–32 (1977), U.S.Code Cong. & Admin.News 1977, pp. 3401, 3431–32, to accomplish the Act's purpose of protecting miners from health and safety hazards. *See* 30 U.S.C. § 801(a) ("[T]he first priority and concern of all in the coal ... mining industry must be the health and safety of ... the miner."). Our own cases confirm this broad reading of legislative history. We have "several times observed that the primary purpose of the Mine Safety Act was to protect mining's most valuable resource—the miner[,] and that Congress intended the Act to be liberally construed to achieve this goal." *Cannelton Indus.,* 867 F.2d at 1437 (citations and internal quotation marks omitted). Jim Walter Resources points to nothing in the Act's language or legislative history demonstrating that the Secretary's broad construction is contrary to the Act's purpose.

### IV

We deny the Secretary's petition for review on the "significantly and substantially" issue. With respect to the "unwarrantable failure" question, we grant the Secretary's petition for review, reverse the Commission, and remand for the Commission to determine whether, applying the Secretary's interpretation of the statute, the record contains sufficient evidence of causation and culpability to support an "unwarrantable failure" finding.

*So ordered.*