NATIONAL MULTI HOUSING COUN-
CIL; NATIONAL APARTMENT AS-
SOCIATION; National Leased Hous-
ing Association, Petitioners,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
Respondent.

Battery Council International,
Intervenor.

No. 01–1159.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 19, 2002.

Decided June 7, 2002.

Rehearing Denied Aug. 1, 2002.

J. Marks Moore III argued the cause for the petitioners. Samuel M. Riley was on brief.

Jon M. Lipshultz, Attorney, United States Department of Justice, argued the cause for the respondent. John C. Cruden, Assistant Attorney General, United States Department of Justice, and Alan Carpien, Attorney, United States Environmental Protection Agency, were on brief.

David B. Weinberg and Edward Loring Ferguson, Jr. entered appearances for the intervenor.

Before: HENDERSON, TATEL and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

In 1992 the Congress passed the Residential Lead–Based Paint Hazard Reduction Act of 1992 (Title X[1] or Act), which, *inter alia,* amended the Toxic Substances Control Act (TSCA), 15 U.S.C. §§ 2601 *et seq.,* by adding Title IV entitled "Lead Exposure Reduction." In 2001 the Envi-

---

**1.** The legislation was enacted as Title X of the Housing and Community Development Act of 1992, Pub.L. No. 102–550, 106 Stat. 3672 (1992).

ronmental Protection Agency (EPA) issued its final "Lead Rule" pursuant to section 403 of TSCA, 15 U.S.C. § 2683. *See* Lead; Identification of Dangerous Levels of Lead, 66 Fed.Reg. 1206 (2001). The petitioners, three trade associations representing the multifamily rental housing industry, challenge the Lead Rule's "regardless of source interpretation," which construes the statutory term "lead-based paint hazard" to include. "leadbased paint and all residential lead-containing dusts and soils *regardless of the source of the lead,* which, due to their condition and location, would result in adverse human health effects." *Id.* at 1207 (emphasis added). The petitioners assert EPA's decision to include all hazardous lead-containing dust and soil, whether or not the source of the lead is leadbased paint, is contrary to the Congress's intent in enacting Title X and is arbitrary and capricious.[2] We reject the petitioners' challenge for the reasons set forth below.

### I.

Title X directs EPA and the Department of Housing and Urban Development (HUD) to take various actions to protect the public from any lead-based paint haz-ard by reducing such hazard[3] or, of particular relevance here, by requiring disclosure of it. Section 1018(a)(1) of Title X directs HUD and EPA to promulgate regulations for the disclosure of leadbased paint hazards in "target housing," that is, "housing constructed prior to 1978," 42 U.S.C. § 4851b(27), which is offered for sale or lease. *See* 42 U.S.C. § 4852d(a). Accordingly, in 1996, EPA and HUD jointly promulgated a final "Disclosure Rule" which requires an owner of target housing to disclose "the presence of any known lead-based paint and/or lead-based paint hazards" before a purchaser or lessee "is obligated under a contract to purchase or lease target housing." *See* 61 Fed.Reg. 9064, 9082 (1996) (codified at 24 C.F.R. § 35.88 (HUD codification); 40 C.F.R. § 745.107 (EPA codification)).

Section 403 of TSCA further requires that EPA "promulgate regulations which shall identify ... lead-based paint hazards, lead-contaminated dust, and lead-contaminated soil." 15 U.S.C. § 2683. Pursuant to this directive, on January 5, 2001 EPA issued its final Lead Rule, which, as noted above, included EPA's regardless of source interpretation that the term "lead-based paint hazard" is "intended to identify lead-

---

**2.** The petitioners also assert the regardless of source interpretation violates the equal protection clause of the Fourteenth Amendment to the United States Constitution but this argument is waived because it was not raised before EPA. *See National Wildlife Fed'n v. EPA,* 286 F.3d 554, 562 (D.C.Cir.2002) ("It is well established that issues not raised in comments before the agency are waived and this Court will not consider them.") (citing *Nat'l Elec. Mfrs. Ass'n v. EPA,* 99 F.3d 1170, 1171 n. 1 (D.C.Cir.1997); *Washington Ass'n for Television & Children v. FCC,* 712 F.2d 677, 681 (D.C.Cir.1983)).

**3.** *See, e.g.,* 42 U.S.C. § 4822 (HUD "shall establish procedures to eliminate as far as practicable the hazards of lead based paint poisoning" and "shall provide for appropriate

measures to conduct risk assessments, inspections, interim controls, and abatement of lead-based paint hazards" with respect to target housing covered by HUD mortgage insurance or assistance payments); *id.* § 4852 (HUD "is authorized to provide grants to eligible applicants to evaluate and reduce lead-based paint hazards in nonpublic housing"); *id.* § 4852a (HUD and EPA "shall establish a task force to make recommendations on expanding resources and efforts to evaluate and reduce lead-based paint hazards in private housing"); *id.* § 4852c (HUD, "in consultation with the [EPA, DOL and HHS], shall issue guidelines for the conduct of federally supported work involving risk assessments, inspections, interim controls, and abatement of lead-based paint hazards").

based paint and all residential lead-containing dusts and soils regardless of the source of the lead, which, due to their condition and location, would result in adverse human health effects." 66 Fed.Reg. at 1207. The petitioners seek review of this portion of the Lead Rule insofar as it requires them to disclose lead contamination in dust and soil from sources other than lead-based paint.

## II.

The petitioners first assert the language of Title X must be construed to refer only to lead hazards from lead-based paint. In construing statutory language we use the familiar *Chevron* analysis:

> If ... " 'Congress has directly spoken to the precise question at issue,' " we "must give effect to Congress's 'unambiguously expressed intent.' " *Secretary of Labor v. F[ed. Mine Safety & Health Review Comm'n]*, 111 F.3d 913, 917 (D.C.Cir. 1997) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, [2781], 81 L.Ed.2d 694 (1984)). "If 'the statute is silent or ambiguous with respect to the specific issue,' we ask whether the agency's position rests on a 'permissible construction of the statute.' " *Id.* (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778, [2782], 81 L.Ed.2d 694).

*Cyprus Emerald Resources Corp. v. Fed. Mine Safety & Health Review Comm'n*, 195 F.3d 42, 45 (D.C.Cir.1999).

The petitioners maintain that EPA's regardless of source interpretation contravenes the Congress's unambiguously expressed intent to target contamination from lead-based paint only. In support, they point to the repeated references to lead-based paint and to "lead-based *paint* hazards" throughout Title X, including, notably, both in section 1018(a)(1), which au-

thorized EPA and HUD to promulgate their joint disclosure rule, and in the legislation's title; the definition of "target housing" to include only "housing constructed prior to 1978," the year the Consumer Product Safety Commission banned residential use of lead-based paint, *see* 61 Fed.Reg. § 9066; and the focus of the pre-enactment congressional hearings on the dangers posed by lead-based paint.

By contrast, EPA maintains that the regardless of source interpretation is consistent with the statutory language and, in particular, with the statutory definition of "lead-based paint hazard" as "any condition that causes exposure to lead from lead-contaminated dust, lead-contaminated soil, lead-contaminated paint that is deteriorated or present in accessible surfaces, friction surfaces, or impact surfaces that would result in adverse human health effects as established by the appropriate Federal agency." 42 U.S.C. § 4851b(15); 15 U.S.C. § 2681(1). EPA contends that because the three lead sources—dust, soil and deteriorated paint—are enumerated separately, and neither "lead-contaminated dust" nor "lead-contaminated soil" is anywhere defined to require that the lead contamination derive from paint, the Act permits regulation of lead contaminated dust and soils regardless of the source of the lead.

We agree with EPA that the Act's definition does not represent the Congress's " 'unambiguously expressed' " intent in view of the statutory definition which broadens the term beyond its literal meaning by including lead-contaminated dust and soil without expressly limiting the source of the contamination to lead-based paint. This being so, we apply the second step of *Chevron* and conclude that EPA's interpretation reflects "a permissible construction of the statute." *Cyprus Emerald*, 195 F.3d at 45.

The arbitrary and capricious standard requires only that an agency "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)). EPA satisfied this standard here. In its response to comments, EPA explained that "while [its] decision to cover lead in dust or soil regardless of the source of the lead is based on the directives of the statute," it is also justified for the additional reason that there is no "good technical basis to exclude from coverage based on the lead source, dust or soil—particularly dust and soil with high levels of lead." EPA Response to Comments at 32–33 (Dec. 22, 2000). Among the technical problems EPA cited is that, "as a practical matter, with current scientific technology, it is not possible to determine with good precision how much of the lead in dust or soil in a specific room or area originated from lead paint in a specific dwelling unit on a specific building component" so that "there is a distinct absence of a scientific method to determine conclusively that the source of lead in dust or soil is not paint on a routine basis." *Id* at 31–32. At oral argument the petitioners' counsel agreed that it is impossible "under current technology" to ascertain whether lead contamination in soil and dust derives from lead-based paint or from some other source. In light of the technological limitation, EPA reasonably required disclosure of *all* lead contaminated soil and dust regardless of source in order to carry out the Congress's undisputed intent to require disclosure and abatement of all hazardous contamination from lead-based paint. A contrary rule requiring disclosure only of contamination known to be from paint, which appears to be what the petitioners seek, would inevitably prevent disclosure of some paint-based contamination because its source cannot be determined.[4]

For the foregoing reasons, the petition for review is

*Denied.*

---

4. It is not clear that EPA's regardless of source interpretation even imposes any additional disclosure obligation on the petitioners. At oral argument their counsel all but acknowledged that in the absence of EPA's interpretation a seller would nevertheless be obligated to disclose lead contamination.