# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 4, 2018           Decided July 10, 2018

No. 17-1219

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
PETITIONER

v.

CONSOLIDATION COAL COMPANY AND FEDERAL MINE SAFETY
AND HEALTH REVIEW COMMISSION,
RESPONDENTS

On Petition for Review of a Decision of the
Federal Mine Safety & Health Review Commission

*Emily C. Toler*, Attorney, Department of Labor, Office
of the Solicitor, argued the cause for petitioner. With her on
the briefs was *Ali A. Beydoun*, Counsel, Appellate Litigation.

*John T. Sullivan*, Attorney, Mine Safety and Health
Review Commission, entered an appearance.

*Billy R. Shelton* argued the cause and filed the brief for
respondent.

Before: SRINIVASAN, MILLETT and KATSAS, *Circuit
Judges*.

MILLETT, *Circuit Judge*:   After a rock extraction caused a roof to collapse in a mining tunnel where miners sometimes work, the Federal Mine Safety and Health Administration cited the Consolidation Coal Company for excavating an excess amount of rock from the tunnel, in violation of what the company's roof plan allowed.   An administrative law judge later reduced the citation fine, concluding that Consolidation Coal's breach of its roof control plan, with the resulting roof collapse, was not a "significant and substantial" safety violation.   On administrative review, the Federal Mine Safety and Health Review Commission deadlocked two-to-two on the issue, leaving the administrative law judge's decision as the final agency decision.   Because the administrative law judge's decision relied critically on types of evidence long foreclosed by Commission precedent, we vacate the decisions of the Commission and the administrative law judge and remand for further proceedings.

## I

The Federal Mine Safety and Health Act of 1977 ("Mine Act"), as amended, 30 U.S.C. § 801 *et seq.*, authorizes the Secretary of Labor to promulgate mandatory mining safety standards, to inspect mines, and to issue citations and civil penalties for violations of those safety standards.   If, in the course of issuing such a citation, an inspector finds that a violation of "any mandatory health or safety standard" is "of such nature as could significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard" and resulted from an "unwarrantable failure" of the mine operator "to comply" with those standards, the inspector shall include this finding in the citation report.   *Id.* § 814(d). Such "significant and substantial" violations can trigger enhanced penalties and, if repeated within a specified time period, can require inspectors to order an evacuation of the mining area until the operator abates the hazard.   *Id.* § 814(d),

(e); 30 C.F.R. § 100.3(a).

The Commission has long broken the test for a "significant and substantial" violation into four parts: (1) the violation of a mandatory safety standard; (2) "a discrete safety hazard—that is, a measure of danger to safety—contributed to by the violation;" (3) "a reasonable likelihood that the hazard contributed to will result in an injury;" and (4) "a reasonable likelihood that the injury in question will be of a reasonably serious nature." *Secretary of Labor v. Mathies Coal Co.*, 6 FMSHRC 1, 3–4 (1984).[1]

To effectuate the policies of the Mine Act, the Mine Safety and Health Administration has promulgated a number of mandatory mine safety standards. As relevant here, the Administration's rules require mine operators to ensure that the tunnels in mines have adequate roof support "where persons work or travel" in order to "protect persons from hazards related to falls of the roof, face or ribs and coal or rock bursts." 30 C.F.R. § 75.202(a). Relatedly, mine operators must submit and abide by a "roof control plan" approved by the Administration's District Manager. *Id.* § 75.220.

## II

In the early morning of July 2011, an Administration mine

---

[1] This court has yet to endorse the *Mathies* test. We need not do so in this case because, as in past cases, the parties have not challenged its application. *See Mach Mining, LLC v. Secretary of Labor*, 809 F.3d 1259, 1263, 1267 (D.C. Cir. 2016) ("Mach does not dispute that whether a violation is serious enough to be 'significant and substantial' is governed by the four-element test in *Mathies Coal Co.*"); *Cumberland Coal Res., LP v. Federal Mine Safety & Health Review Comm'n*, 717 F.3d 1020, 1027 (D.C. Cir. 2013) ("In addressing this argument, we do not intend to imply that we are adopting the *Mathies* test, the validity of which is not challenged here.").

inspector, Gregory Ratliff, came to Buchanan Mine #1 to investigate a complaint about water leakage. While there, Ratliff noticed that a portion of the mine's roof had collapsed in a crosscut between two entry points. According to the mine's foreman, the roof had collapsed while they were cutting a piece of rock from the area, dislodging "a couple of [roof] bolts" and breaking the mining machine's conveyor chain. J.A. 113. Because the roof in this portion of the mine contained several pre-existing cracks, the mine's roof control plan limited miners to a cut of no more than 20 feet at a time. On closer inspection, Ratliff noticed that the cut of rock from this area appeared to exceed 20 feet—the maximum depth permitted under such adverse roof conditions.

By the time Ratliff discovered the collapse, the miners were already in the process of bolting the unsupported roof down. When they finished, Ratliff measured the cut and, as suspected, found that it exceeded the permissible 20-foot depth, measuring 23.5 feet from the last row of roof bolts. Based on this evidence, Ratliff issued a citation to the Consolidation Coal Company, the mine's owner and operator, for violation of the mine's roof control plan. Because the violation "expose[d] miners to the hazards associated with roof falls," the inspector also concluded that the violation was "significant and substantial" and set a fine of $3,405. J.A. 40, 127–128.

Consolidation Coal contested the citation in a hearing before an administrative law judge ("ALJ"). The ALJ agreed with Inspector Ratliff that the cut exceeded the depth permitted under the company's approved roof control plan and so violated a mandatory safety standard. But the ALJ also ruled that the resulting hazard was not "significant and substantial" because, in her view, it was not reasonably likely to result in injury, as required by the third prong of the *Mathies* test. The judge rested her finding of no reasonable likelihood of injury on four factual findings:

1)    Miners were unlikely to access the area of unsupported roof because "they work a substantial distance back" and "are not permitted to enter the 'red zone' beyond the next-to-last row of bolts." J.A. 42.

2)  The miners that did access this area would only do so under the protection of coal excavation equipment (in the case of employees working on the mine's ventilation) or an Automated Temporary Roof Support (ATRS) system (in the case of miners installing additional roof bolts). J.A. 42.

3)  The mine employed a tighter roof bolting pattern in the area, decreasing "the likelihood that a roof fall originating in the extended cut would be able to spread into or significantly affect the bolted roof areas behind it." J.A. 42.

4)  Miners were already bolting the unsupported roof when the inspector arrived, leaving mine employees subject to the hazard for only a short period of time. J.A. 43.

Based on those findings, the ALJ reduced the fine from $3,405 to $1,500.

When the Secretary sought administrative review of this decision, the Federal Mine Safety and Health Review Commission came to an impasse. Two Commissioners concluded that there was substantial evidence to support the ALJ's findings. And two Commissioners voted to reverse, concluding that the ALJ impermissibly relied on Consolidation Coal's compliance with other, different safety measures, rather than focusing on the hazard resulting specifically from the roof plan violation. They also concluded that the ALJ had ignored record evidence about miners who needed to enter the area potentially affected by the roof collapse.

The two-to-two division of the Commissioners made the ALJ's ruling the final agency decision. The Secretary then petitioned this court for review, arguing that the ALJ impermissibly relied on redundant safety measures and miner precaution in concluding that the violation was not "significant and substantial."[2]

## A

At the outset, we are met with Consolidation Coal's argument that we cannot entertain the Secretary's objections because they were not argued before the ALJ, but instead were raised for the first time on appeal to the Commission. Both law and logic foreclose that argument.

As a matter of logic, the Secretary's objections speak to alleged flaws in the ALJ's decision itself. The Secretary argues that, in finding no significant and substantial safety violation, the ALJ relied on legally irrelevant factual findings. Having not been warned in advance by Consolidation Coal's arguments that the ALJ might run afoul of Commission precedent in her analysis, the Secretary could hardly be expected to point out the legal errors in the ALJ's decision before that decision issued.

Fortunately, the law here points in that same logical direction. The Mine Act limits this court to objections raised "before the Commission." 30 U.S.C. § 816(a)(1). The statute says nothing about judicial review of objections not raised before the ALJ.

To be sure, the Mine Act generally limits discretionary petitions for Commission review to questions of fact or law upon which the ALJ has "been afforded an opportunity to pass,"

---

[2] Both parties agree that we review the reasoning of the ALJ in the event of a divided Commission decision. We assume "without deciding" that this is the proper focus of our review.

unless the petitioning party can show "good cause" for failing to raise the issue below. 30 U.S.C. § 823(d). But the Commission also retains the right to review an ALJ's decision *sua sponte* if the judge acts "contrary to law or Commission policy" or the decision raises "a novel question of policy." *Id.* § 823(d)(2)(B). That *sua sponte* review requires the vote of only two Commissioners, *id.*, which functionally occurred in this case when the two Commissioners favoring reversal pointed to the ALJ's erroneous reliance on redundant safety measures and miner caution. Given that, our review comports with the statutory requirements.

On top of all that, ALJs have an independent obligation "to apply Commission precedent to the legal issue raised" regardless of whether the Secretary expressly directs them to it. *Secretary of Labor v. San Juan Coal Co.*, 29 FMSHRC 125, 129 (2007) ("To conclude that the judge was bound to consider only the factors that the Secretary explicitly discussed in her brief, even where the evidence clearly demonstrates the relevance of other factors, would impermissibly constrain the judge's responsibility to apply Commission precedent to the legal issue raised on the facts developed in the record."). The ALJ's failure to walk the correct legal path is subject to Commission review as long as the misstep is "implicitly" raised or is "so intertwined with an element tried" that "it may properly be considered on appeal." *Id.* at 130. Like the ALJ's refusal to consider one prong of the applicable test in *San Juan Coal Company*, the relevance in this case of alternative safety measures and miner precaution was inherently bound up in the Secretary's argument that the roof control violation was likely to result in injury.

**B**

The Secretary's objection that the ALJ, in finding no reasonable likelihood of injury, impermissibly relied on redundant safety measures is well taken. The ALJ's critical

fact findings involved Consolidation Coal's compliance with other required safety standards, such as the ATRS system. The ALJ also relied on miners to protect themselves by avoiding the area under the unsecured roof.

Ample Commission precedent holds that such considerations are irrelevant to the likelihood-of-injury analysis. That is because the third prong of the *Mathies* test focuses on the risk of injury created by the safety violation itself. *See*, *e.g.*, *Secretary of Labor v. Black Beauty Coal Co.*, 38 FMSHRC 1307, 1313–1314 (2016) ("[T]he methane monitor, fire suppression system and devices, water sprays, CO monitors, fire brigade, breathing devices and turnout gear for firefighters are the sort of safety measures that we, and the appellate courts, have held to be irrelevant to the [significant and substantial] analysis under the Act."); *Secretary of Labor v. Brody Mining, LLC*, 37 FMSHRC 1687, 1691 (2015) ("When deciding whether a violation is [significant and substantial], courts and the Commission have consistently rejected as irrelevant evidence regarding the presence of safety measures designed to mitigate the likelihood of injury resulting from the danger posed by the violation."). The Commission itself has characterized this rule as "well settled." *Black Beauty Coal Co.*, 38 FMSHRC at 1312.

The same is true of miner precaution. Because the safety standards are there to protect miners, the hope or expectation that miners will protect themselves "is not relevant under the *Mathies* test." *Secretary of Labor v. Newtown Energy Inc.*, 38 FMSHRC 2033, 2044 (2016); *see also Secretary of Labor v. Eagle Nest, Inc.*, 14 FMSHRC 1119, 1123 (1992) ("We reject the judge's conclusion that the 'exercise of caution' may mitigate the hazard."); *Secretary of Labor v. United States Steel Mining Co.*, 6 FMSHRC 1834, 1838 (1984) (dismissing argument that the violation of a cable marking requirement was not reasonably likely to cause injury because miners could determine the identity of cables by process of elimination);

*Secretary of Labor v. Great W. Elec. Co.*, 5 FMSHRC 840, 842 (1983) (considering miner skill "ignores the inherent vagaries of human behavior"). As the Commission has pointed out, while "miners should, of course, work cautiously, that admonition does not lessen the responsibility of operators, under the Mine Act, to prevent unsafe conditions." *Eagle Nest, Inc.*, 14 FMSHRC at 1123. This reading also has the benefit of advancing the stated purpose of the Mine Act, which gives "the first priority and concern" to the "health and safety of its most precious resource—the miner," in view of "an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm." 30 U.S.C. § 801(a), (c).

This court's precedent is of the same mind. In *Secretary of Labor v. Federal Mine Safety & Health Review Commission* (*Jim Walter Resources, Inc.*), 111 F.3d 913 (D.C. Cir. 1997), this court held that the Commission could not rely on aggravating facts external to a safety violation to conclude that the violation was of such nature as to significantly and substantially contribute to a hazard, *id.* at 915. The Secretary's reading of *Mathies* relies on this same principle in reverse: that circumstances external to a violation cannot be used to reduce the likelihood that harm will ensue.

Likewise, in *Cumberland Coal Resources, LP v. Federal Mine Safety & Health Review Commission*, 717 F.3d 1020 (D.C. Cir. 2013), this court again interpreted the statutory text to focus on the "nature" of "the violation" rather than any surrounding circumstances. More to the point, the court held that "consideration of redundant safety measures,"—that is, "preventative measures that would have rendered both injuries from an emergency and the occurrence of an emergency in the first place less likely"—"is inconsistent with the language of [Section] 814(d)(1)." *Id.* at 1028–1029.

As with other administrative bodies, the Commission errs when its decisions depart from its own "directly on point" precedent without supplying a reasoned basis for the change. *See Lone Mtn. Processing v. Secretary of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013). In this case, extensive Commission precedent precluded reliance on the very type of facts on which the ALJ founded her finding of no likelihood of injury. Once the ATRS system and miner self-protection are backed out of the ALJ's analysis, the only the remaining factors cited by the ALJ for finding no substantial or significant violation were the tighter roof bolting system and the short duration of the hazard. Given the inherent risk in a roof collapse, with miners in the area and potentially underfoot, we are in no position to brush off the reasonable possibility of injury. The ALJ decision, with the impermissible considerations removed, cannot be sustained on this record.

Consolidation Coal points to other evidence to show that there was not a reasonable likelihood of injury. There is one problem: The ALJ did not rely on the vast majority of the evidence cited by Consolidation Coal. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("We may not supply a reasoned basis for the agency's action that the agency itself has not given.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). In fact, she never even mentioned it. The two-affirming Commissioners, to be sure, recited that additional evidence as support for the ALJ's ruling. But Consolidation Coal agrees that the decision under review is that of the ALJ, not the reasoning of just one-half of an equally divided Commission. Respondent's Br. 9. And in any event, the Commission has no authority to supplement the factual record on its own. *See* 30 U.S.C. § 823(d)(2)(C) ("If the Commission determines that further evidence is necessary on an issue of fact[,] it shall remand the case for further proceedings before the [ALJ].").

We note, in conclusion, that this case does not present the

question of whether redundant safety measures or miner precaution could be relevant at any other step of the *Mathies* inquiry. The ALJ rooted her decision in the likelihood-of-injury prong. That was error under settled Commission precedent. For that reason, we vacate the ALJ's and Commission's decisions, and remand for further proceedings consistent with this decision.

*So ordered.*